334 So.2d 642 (1976)
Dalton ABBOTT, Appellant,
v.
The STATE of Florida, Appellee.
No. 74-1791.
District Court of Appeal of Florida, Third District.
May 25, 1976.
Rehearing Denied July 29, 1976.
*643 Phillip A. Hubbart, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., and Steven Ginsburg, Legal Intern; Richard E. Gerstein, State's Atty., and Lance R. Stelzer, Asst. State's Atty., for appellee.
Before PEARSON, HENDRY and NATHAN, JJ.
*644 PER CURIAM.
The appellant, Dalton Abbott, was one of the defendants in an information which charged him in two counts. Other defendants were charged in other counts. Defendant Abbott was charged with conspiracy to commit a felony, to-wit: accessory after the fact and with being an accessory after the fact to the crimes of grand larceny, forgery and uttering forged instruments. He was found guilty by a jury, adjudication and sentence were entered and this appeal ensued.
The principal defendant at the trial of the seven defendants was S.K. Bronstein who was charged in sixty-three counts with appropriation of monies belonging to Cedars of Lebanon Hospital Corporation, an institution in Miami, Florida. In substance, those counts charged that Bronstein, the President of the Cedars of Lebanon Hospital Corporation, wrongfully caused that hospital to issue twenty-one checks to various payees, which were fraudulently endorsed and cashed and the proceeds of which were appropriated by Bronstein.
Abbott has presented four points for our consideration in this appeal. We have studied the voluminous record of the trial court proceedings in this cause and we conclude that none of the points demonstrates reversible error. All four points will be discussed in this opinion.
The first point is whether the trial court erred in denying a co-defendant's motion for continuance based on television and newspaper publicity prior to trial. It is a general rule that the trial judge is vested with broad discretion in matters of a requested continuance, and by virtue of his closeness and intimacy with the circumstances of the case he will not be reversed on appeal unless there is a clear showing of a palpable abuse of this judicial discretion. Matera v. State, Fla.App. 1969, 218 So.2d 180; Sikes v. State, Fla.App. 1973, 280 So.2d 17.
During voir dire examination of the prospective jurors, each juror was asked whether he/she had heard, read or seen anything about the case. Those who replied affirmatively were asked whether or not what they observed caused them to form an opinion as to the guilt or innocence of the defendants. Of the sixty-five persons who had some form of knowledge about the case, only seven responded that they had formed an opinion, and two were not sure whether they had an opinion. Four of these nine were promptly excused for cause based on their statements of opinion. The other five were ultimately excused and formed no part of the final jury panel. The remaining prospective jurors (fifty-six) all stated that they had formed no opinion as to the guilt or innocence of any of the defendants. The panel indicated that they understood that what was read or seen outside of court did not constitute evidence, and they agreed to consider only the evidence presented at trial. The jurors were asked if they could lay aside anything they may have read, observed or heard, or any feelings they might have. The response was affirmative. Affirmative response also came when questioned if they could give both the defendants and the State a fair and impartial trial. The jurors promised to consider each individual defendant separately. As to the television publicity, only sixteen prospective jurors saw anything at all about the case. At least thirty-four jurors saw absolutely nothing. Of those that saw anything on television, what they saw was characterized by the jurors themselves as: a glimpse, a few times, very little, no court proceedings, once over a month ago, twice, but nothing recently, and no opinion of what was seen, a little, but didn't learn from it nor remember. On the question of newspaper publicity, some of the jurors stated they seldom or hardly read the newspaper. Others restricted their readings to such sections as sports, television, comics and horoscopes. Others managed to "glance" through the newspaper or see headlines relating to the *645 case. These people did not read any of the articles. Most of these people were not interested in what they read, did not remember anything, and only noticed anything several months prior to the trial when the story first broke. Only a few answered that they read articles relating to the case. Of all of the jurors who indicated they had heard or read something about the case, none of them knew of defendant Abbott, appellant herein.
In a case such as this, when the publicity is neither inherently inflammatory nor the circumstances of the case egregiously prejudicial, the declarations of the jurors as to their impartiality must be dispositive unless the appellant surmounts the burden of showing actual substantial prejudice to him from trial before the jury. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; Gordon v. United States, 5th Cir.1971, 438 F.2d 858; United States v. D'Andrea, 3rd Cir.1974, 495 F.2d 1170, 1172 fn. 5. Based on the foregoing, we find that the trial judge did not abuse his discretion in denying the motion for continuance based on pretrial publicity.
The second point is whether the trial court erred in denying the defendant's motions for severance made prior to and during the course of the trial. The thrust of this point is a 3-pronged attack, contending (1) that the trial court erred in denying Abbott's motion for severance seeking relief from misjoinder; (2) that the trial court erred in denying his motion for severance where it was shown that Bronstein, the principal defendant, charged with 63 counts of larceny, forgery and uttering forged instruments, would give exculpatory testimony on behalf of Abbott if a severance were granted; and (3) that the trial court erred in denying Abbott's motions for severance seeking relief from prejudicial joinder because evidence irrelevant to Abbott was introduced against Bronstein which was prejudicial to Abbott, and because verbal exchanges between Bronstein's counsel and the prosecutors, in the presence of the jury, rendered a fair trial for defendant Abbott impossible.
On the question of misjoinder, Rule 3.150(b), Florida Rules of Criminal Procedure, provides:
"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information upon which they are to be tried:
(1) when each defendant is charged with accountability for each offense charged;
(2) when each defendant is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to have been committed in furtherance of the conspiracy; or
(3) when, even if conspiracy is not charged and all defendants are not charged in each county, it is alleged that the several offenses charged were part of a common scheme or plan.
Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."
Rules 3.150, 3.151 and 3.152 of the Florida Rules of Criminal Procedure provide for one trial in instances involving related offenses as well as those instances involving several defendants charged with the same offense. Certainly, conspiracy to cover up a larceny is a related offense. In Wilson v. State, Fla.App. 1974, 298 So.2d 433, 434-435, the rule is stated that joinder is not proper unless:
"... the charging document makes one of the following allegations: (a) each defendant is charged with accountability for each offense, or (b) each defendant is charged with conspiracy, or (c) the several offenses charged are part of a common scheme or plan. The answer lies in the interpretation of Rules 3.150(b) and 3.152(b), RCrP, and authorities construing similar federal rules."
*646 We hold that the joinder of defendant Abbott with defendant Bronstein has not been shown to be error.
On the question of severance due to Bronstein's willingness to give exculpatory testimony on behalf of Abbott, Rule 3.152 (b), RCrP, concerning "Severance of defendants," in pertinent part, provides:
"(1) On motion of the State or a defendant, the court shall order a severance of defendants and separate trials:
(i) before trial, upon a showing that such order is necessary to protect a defendant's rght to a speedy trial, or is appropriate to promote a fair determination of the guilt or innocence of one of more defendants ..."
Motions for severance are addressed to the sound discretion of the trial judge and the order will not be reversed except for palpable abuse of judicial discretion. Grech v. State, Fla.App. 1971, 243 So.2d 216, 218. Therefore, it is incumbent upon a defendant who appeals a denial of his motion for severance to show at least a likelihood that he did not get a fair trial because of the denial of the motion to sever. The only possibility of prejudice to Abbott that is urged is that Abbott was deprived of Bronstein's testimony that he, Abbott, did not know of Bronstein's larceny. But Bronstein could not testify as to what Abbott knew or did not know. The best that Bronstein could do for Abbott would be to testify that he did not tell Abbott that he, Bronstein, was guilty. Abbott's guilty knowledge, or lack of it, had to be determined by the jury from the circumstances surrounding Abbott's actions in attempting to help Bronstein to cover up the illegal dispositions of the hospital's money.
Judicial efficiency and economy dictate one trial where possible. Cf. Eagle v. State, Fla.App. 1971, 249 So.2d 460. In addition, Bronstein's offer to tender testimony was contingent upon Abbott's being tried in a "separate later trial," and was conditioned upon Bronstein's being removed from criminal jeopardy. It is not clear whether this means after acquittal or after the exhaustion of appellate remedies. If the latter is the meaning, Abbott was asking for an indefinite postponement of his trial. This is a clearly impractical proposal. It is clear that Bronstein's offer to testify for Abbott was not an unconditional offer to testify at a separate trial. Because no real prejudice has been shown and because the possibility of helpful testimony from Bronstein was too remote, the court did not err in denying the motion to sever on this ground.
As to the interaction during trial between Bronstein's counsel and the prosecutor, the record reflects that the former was held in contempt on six occasions during the trial, and the latter on one occasion. In our opinion, however, the remarks they made were not so prejudicial as to have required a declaration of a mistrial or granting a severance. It has long been held that the granting or denial of a motion for mistrial is a matter of discretion with the trial judge. Garcia v. State, Fla. App. 1962, 142 So.2d 318; Reis v. State, Fla.App. 1971, 248 So.2d 666, 670. Such motion should never be granted in the midst of a criminal trial unless there is an absolute legal necessity to stop the trial and discharge the jury. Kelly v. State, Fla. App. 1967, 202 So.2d 901, 903; Reis v. State, supra.
During closing arguments, counsel advised the jury, as did the court during the course of the trial and in its instructions to the jury, to disregard the editorial comments made by the attorneys, since such comments are not evidence. No abuse of discretion has been shown in the denial of the motions for severance on this ground or on the other grounds discussed above.
The third point is whether the trial court erred in denying Abbott's motion for judgment of acquittal where the evidence was insufficient to support the *647 convictions as charged in the information. The burden of establishing error is always on the appellant. The verdict or judgment of guilt having arrived in this court clothed with a presumption of correctness, all inferences to be drawn from the evidence are to be in favor of the verdict or judgment of guilt. Crum v. State, Fla. App. 1965, 172 So.2d 24, 25. As a general proposition, it is the burden of the appellant to make error appear in the record. Bryant v. State, Fla.App. 1967, 204 So.2d 9. Conflicts in evidence and the fact that it may have been susceptible of differing inferences and presented the trier of the facts with questions as to credibility of witnesses and weight to be given to testimony and other evidence presented, will not establish insufficiency of the evidence to sustain a judgment of conviction when the record discloses there was competent substantial evidence in law for its support. Wetherington v. State, Fla.App. 1972, 263 So.2d 294, 295. Without a recitation of the myriad facts in evidence implicating defendant Abbott, suffice it to say that from our review of the record, it is clear that there is competent substantial evidence to support the verdict and conviction of guilt.
Defendant's fourth point is whether the trial court erred in denying Abbott's motions for mistrial based on the prosecutors' prejudicial comments during closing arguments to the jury. Each case involving an alleged impermissible appeal by the prosecutor to the sympathy of the jury must be considered on its own merits and within the circumstances pertaining when the questionable argument was made. Breniser v. State, Fla.App. 1972, 267 So.2d 23, 26. The burden is on the defendant to show that the comments of the prosecutor constituted harmful error, since prosecutorial comment may constitute harmless error. Falcon v. State, Fla. 1969, 226 So.2d 399. In order to constitute reversible error, the comments must be so fundamentally tianted that neither objection nor retraction could entirely destroy their sinister influence. Sherman v. State, Fla. 1971, 255 So.2d 263, 266. Having reviewed the closing arguments of the prosecutors in this case, we are of the opinion that they were neither harmful nor so fundamentally tainted that neither retraction nor request for cautionary instructions could destroy their alleged possible harmful influence. Therefore, reversal on this point is unwarranted.
Affirmed.